# In the United States Court of Federal Claims

No. 22-510V

(Filed Under Seal: July 14, 2023)

(Public Filing: January 14, 2026*)

|  |  |
|---|---|
| **BERNADETTE ROGERS, as Legal Representative of WILLIE LEE WILLIAMS,** | ) ) ) ) ) |
| *Petitioner,* | ) ) |
| v. | ) ) ) |
| **SECRETARY OF HEALTH AND HUMAN SERVICES,** | ) ) ) ) |
| *Respondent.* | ) ) |

*Bernadette Rogers*, Riverview, FL, *pro se*.

*Claudia B. Gangi*, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for Respondent. With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *C. Salvatore D'Alessio*, Director, *Heather L. Pearlman*, Deputy Director, and *Alexis B. Babcock*, Assistant Director.

## OPINION AND ORDER

On February 22, 2022, Ms. Willie Lee Williams of Florida passed away at the age of ninety-one. ECF No. 1 ("Pet.") at 2. According to filings in the above-captioned Vaccine Injury Compensation Program ("VICP") petition, Ms. Williams had six children and a long career as a well-regarded public-school teacher. ECF No. 35 at 3. As described below, Petitioner, Bernadette Rogers, is one of Ms. Williams's children, and she filed a *pro se* petition to the VICP that alleged, amongst other things, that vaccines Tampa General Hospital gave Ms. Williams contributed to her death. Pet. at 1. Special Master Moran denied the petition. ECF No. 29 ("Special Master Decision"). Petitioner now asks the Court to review the special master's decision. ECF No. 31 ("Mot. Rev."). Respondent, the Secretary of Health and Human Services, has argued this Court should affirm the special master. ECF No. 33 ("Rev. Resp."). The Court is sympathetic to Ms. Rogers's family as it mourns Ms. Williams. However, for the reasons described below, this Court denies the Petitioner's motion for review, ECF No. 31.

## I.    FACTUAL BACKGROUND

According to hospital documents, Ms. Williams was admitted to Tampa General Hospital on February 2, 2022, for an "altered mental status" that may have stemmed from a urinary tract infection. ECF No. 14-2 at 75 (medical records filed by Petitioner). Ms. Williams tested positive for asymptomatic COVID-19, which caused the hospital to isolate her through February 13, 2022. *Id.* The hospital documented other medical issues facing Ms. Williams. *Id.* at 71, 75.[1] On February 15, 2022, the hospital discharged Ms. Williams after "Patient's daughter requested discharge home with hospice services and hospice admission was arranged." *Id.* at 74–75.

On February 22, 2022, Ms. Williams passed away due to cardiovascular disease and congestive heart failure with dementia as a contributory cause. ECF No. 14-2 at 50–51 (autopsy report). The toxicology report detected no harmful substances. *Id.* at 56.

During Ms. Williams's February 2022 hospitalization, she was administered several medications. ECF Nos. 12-1 to -5 (individual pages of one hospital report); ECF No. 14-2 at 99–104 (additional hospital documentation). This included medications administered orally, intravenously, topically, and as eyedrops. ECF Nos. 12-3 to -5; ECF No. 14-2 at 103–04. In addition to these, Ms. Williams's hospital reports refer to two vaccines: a pneumococcal vaccine and a flu vaccine. ECF Nos. 12-3 to -5; ECF No. 14-2 at 103–04. Ms. Williams received a pneumococcal polysaccharide vaccine known as PPSV23. ECF Nos. 12-3 to -5; ECF No. 14-2 at 99–100; *see* Special Master Decision at 3 ("Ms. Rogers presented evidence to show that Ms. Williams received this vaccine." (citing ECF No. 14-2 at 100)).

Even though Ms. Williams's hospital records mention a particular flu vaccine (Fluarix), the parties disputed before the special master whether Ms. Williams received that vaccine. *See* Pet. at 1 (claiming Ms. Williams received the vaccine); ECF No. 18 at 1 (Respondent contending that "it is unclear whether Willie Lee Williams actually received the influenza vaccine during her February 2022 hospitalization" (citing ECF No. 14-2 at 82, 99–100, 103–104)). The parties continue to dispute this fact. Mot. Rev. at 1; ECF No. 35 at 2 (Petitioner reasserting this in a recent motion); Rev. Resp. at 14. On one hand, the flu vaccine appears in a list of Ms. Williams's medications at the hospital. *See* ECF No.

---

[*] This decision was initially issued under seal on July 14, 2023, in accordance with Rule 18(b) of the Vaccine Rules of the United States Court of Federal Claims, to permit Petitioner time to propose redactions. Neither party proposed any redactions. Accordingly, this opinion is reissued, in full, without any redactions.

[1] These issues included her chronic atrial flutter, ECF No. 14-2 at 2–13, 75; globicatella bacteremia, *id.* at 75; and acute kidney disease, *id.* A full list appears in the discharge documents. ECF No. 14-2 at 75.

14-2 at 99, 103 (reports from inpatient consults on February 4–5, 2022). On the other hand, additional hospital documents indicate Ms. Williams specifically did not receive the flu vaccine. *See id.* at 82 (hospital discharge instructions showing a flu vaccine with a date crossed out and replaced with "Deferred"); ECF No. 25-1 at 3–4 (supplemental hospital records indicating the flu vaccine had "Deferred" status and was "Discontinued" because of Ms. Williams's discharge).

## II.  PROCEDURAL HISTORY

On May 9, 2022, Petitioner initiated her vaccine claim on behalf of her deceased mother. In her petition, Ms. Rogers claimed that the hospital gave Ms. Williams the two vaccines described above without Ms. Williams's consent and without notifying Ms. Williams's health surrogate.[2] Pet. at 1. Petitioner purported that these vaccines "contributed to [Ms. Williams's] death." *Id.* Additionally, Ms. Rogers claimed the medical staff's "breach of duty of care and negligence due to forcing unnecessary drugs through the IV was the cause of Ms. Williams['s] death." *Id.* On this basis, Petitioner sought: (1) damages of $1,000,000 for Ms. Williams's wrongful death plus medical expenses; and (2) "the transfer of clear adverse title to the home where Mrs. Williams resided and died." *Id.* at 2.

On June 14, 2022, and July 25, 2022, Petitioner filed medical records. ECF Nos. 12, 14. Pursuant to the special master's October 6, 2022, scheduling order, ECF No. 16, Respondent filed a status report on November 21, 2022, ECF No. 18. There, Respondent called attention to "one potential factual issue that may require further development": whether Ms. Williams received the flu vaccine. ECF No. 18 at 1.

During a December 1, 2022, status conference, "the parties discussed the issue of establishing that Ms. Williams received the flu vaccine." ECF No. 26 at 2 (order by Special Master Moran summarizing proceedings to date). The following day, the special master ordered Respondent to request hospital records about whether Ms. Williams received the flu vaccine and to file any resulting documents by January 30, 2023. ECF No. 21.

On January 25, 2023, Respondent filed Tampa General records that indicated the hospital did *not* administer the flu vaccine to Ms. Williams. ECF No. 26 at 2 (citing ECF No. 25-1 at 3) (Special Master Moran's summary of filings). Special Master Moran consequently issued a show cause order on January 27, 2023: "for Ms. Rogers's claim to proceed, she must establish with preponderant evidence that Ms. Williams received the

---

[2] Petitioner refers to one other medication in her petition: "Fluronax to prevent diarrhea or other digestive issues." Pet. at 1. However, the record does not support that a medication with that name was administered to Ms. Williams. *See* ECF No. 14-2 at 103–05. Furthermore, the VICP covers vaccine-related injuries; it does not cover medications generally. *See* 42 U.S.C. § 300aa-11(a)(1).

3

flu vaccine in February 2022." *Id.* Petitioner responded to the show cause order on February 8, 2023, providing documents illustrating the historical value of the VICP and the symptoms of pneumococcal disease. ECF No. 27-1 ("Show Cause Resp.") at 1, 6. Petitioner also described vaccine side effects and reiterated assertions about Ms. Williams's treatments at Tampa General. *Id.* at 4–5.

In addition to her claims from the original petition, Petitioner for the first time in her response to the show cause order claimed the hospital engaged in illegal organ harvesting and trafficking in its removal of Ms. Williams's spleen. Show Cause Resp. at 5–6; ECF No. 14-2 at 96 (indicating Ms. Williams had "[u]ndergone splenectomy"). Petitioner also for the first time requested that Special Master Moran recuse himself from her petition as, she argued, Special Master Moran's work for the Department of Justice early in his career constituted a conflict of interest. Show Cause Resp. at 6–8. Specifically, Petitioner claimed that there is "some bias and or discrimination, conflict of interest, and a lack of [i]ndependent review" stemming from the special master's past employment. *Id.* at 6.

After reviewing Petitioner's show cause response and motion for recusal, Special Master Moran on April 11, 2023, denied petitioner's motion for recusal. Special Master Decision at 2–3 ("A judicial officer's past employment in the Department of Justice does not serve as a basis for recusal in every case in which current attorneys working at the Department of Justice appear. . . . The undersigned will fairly adjudicate Ms. Rogers's case based upon the evidence.").

In that same order, Special Master Moran dismissed Petitioner's two claims. Special Master Decision at 3–5. With regard to the pneumococcal polysaccharide vaccine claim, Special Master Moran noted that this vaccine "is expressly excluded from the Vaccine Program." *Id.* at 4 (citing National Vaccine Injury Compensation Program: Addition of Pneumococcal Conjugate Vaccines to the Vaccine Injury Table, 66 Fed. Reg. 28166 (May 22, 2001)). Because "Ms. Williams received a pneumococcal *polysaccharide* vaccine," the special master concluded that "the claim must be dismissed." Special Master Decision at 3–4 (emphasis added) (citing Court of Federal Claims precedents).

Concerning Petitioner's claim related to a flu vaccine, the special master decided that Petitioner had "fail[ed] to present evidence" that Ms. Williams received the flu vaccine in February 2022. Special Master Decision at 4–5. He therefore dismissed this claim, too. *Id.* (citing cases).

Following Special Master Moran's decision, Petitioner filed a motion for review on April 14, 2023, that argued that additional hospital records would support her flu vaccine claim and that Special Master Moran reached a biased decision. Mot. Rev. at 1. Respondent filed its response to Petitioner's motion on May 15, 2023. Rev. Resp. at 1, 8–11. On May 26, 2023, Ms. Rogers filed a separate "Petitioner Conscious Motion" that

4

raised substantive and procedural requests concerning this Court's review. ECF No. 35 ("Conscious Motion"); *see* ECF No. 34 (the Court's order allowing the addition of this motion to the docket). Amongst other points, Petitioner argued that Special Master Moran erred in his decision as there are "character issues on the defendant side." Conscious Motion at 1–3. However, Petitioner also discussed how "this claim is not about Mr. Moran['s] recusal," but rather "the inability to see through all the lies and bad characters and have the ability to come to a settlement with impartiality." *Id.* at 3.

In addition to restating her claims from her petition and her show cause response, Petitioner's final motion, in support of her petition for review, included numerous new claims. One such claim alleged that Ms. Williams's employment required annual vaccinations that led to "lymph edema and hypertension liver and in 2022 kidney failure Tachycardia to Myocardial infraction." Conscious Motion at 3. Petitioner also requested that "defendant and special master or judges or staff" disclose any vaccine or pharmaceutical stocks and that this Court should order "grand jury" hearings and subpoenas. *Id.* at 4.

## III.   STANDARD OF REVIEW

This Court possesses jurisdiction, pursuant to the Vaccine Act, to review a special master's decision upon the filing of a petition from either party within thirty days of that decision. 42 U.S.C. § 300aa-12(e)(1). On review, the Court may:

> (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
> (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
> (C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2).

This Court reviews the decision of a special master to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008) (quoting 42 U.S.C. § 300aa–12(e)(2)(B)) (citing *Markovich v. Sec'y of Health & Hum. Servs.*, 477 F.3d 1353, 1355–56 (Fed. Cir. 2007)). The exception to this is applications of the law, which this court reviews without deference. *See Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (citing *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1383–84 (Fed. Cir. 2011)). The Court employs a "uniquely deferential" standard of review toward

5

special masters' fact-based findings pursuant to the Vaccine Act, and the Court cannot "second-guess the special master's fact-intensive conclusions, particularly where the medical evidence of causation is in dispute." *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993).

While a special master's decision "is entitled to deference," *Morse v. Sec'y of Health & Hum. Servs.*, 93 Fed. Cl. 780, 783 (2010), this Court will find that a special master has abused his discretion if his decision: "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) follows from a record that contains no evidence on which the [special master] could rationally base [his] decision." *Wirtshafter v. Sec'y of Health & Hum. Servs.*, 155 Fed. Cl. 665, 671 (2021) (quoting *Ninestar Tech. Co. v. Int'l Trade Comm'n*, 667 F.3d 1373, 1379 (Fed. Cir. 2012)).[3]

Ms. Rogers, in addition to raising claims pursuant to the VICP, makes several claims not related to vaccines at all. These claims include her allegations of criminal organ harvesting, negligent medical treatment, and administration of medications without proper consent. This Court's jurisdiction generally extends well beyond VICP petitions — to include a wide-variety of money claims against the United States — but such claims must be filed against in the government in a separate complaint and not in a vaccine case or in a petition for review. Even if the Court generously reads Petitioner's allegations as constituting a *pro se* complaint,[4] the Court has an independent duty to review claims to ensure the Court has jurisdiction. *See* Rule 12(h)(3) of the Rules of the Court of Federal Claims ("RCFC"). Here, as explained further below, the Court lacks jurisdiction over Petitioner's ancillary claims, even if they had been properly filed.

Generally, "the jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the [C]ourt authority to render judgment on certain monetary claims against the United States." *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009). In pertinent part, the Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department,

---

[3] *See also Spahn v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 252, 257 (2018) ("This Court will find an abuse of discretion only where the special master's decision is clearly unreasonable, based upon an erroneous conclusion of law, rests on erroneous fact finding, or based on a record without evidence to support the special master's decision.").

[4] Petitioner is proceeding *pro se*, and this Court generally holds a *pro se* plaintiff to "less stringent standards" with regards to how a plaintiff presents claims. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam); *see, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

>or upon any express or implied contract with the United
>States, or for liquidated or unliquidated damages in cases not
>sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act provides this Court with jurisdiction to decide "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) (citing 28 U.S.C. § 1491(a)(1)). The Tucker Act, however, "does not create a substantive cause of action." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).

This Court also lacks jurisdiction over criminal claims, and this Court may not "adjudicate any claims whatsoever under the federal criminal code." *See, e.g., Jones v. United States*, 440 F. App'x 916, 918 (Fed. Cir. 2011) (noting that the Court of Federal Claims "has no jurisdiction over criminal matters generally" (citing 28 U.S.C. § 1491)); *see also Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994).

Furthermore, this Court does not have general authority to issue injunctive relief. *See, e.g., Shelden v. United States*, 742 F. App'x 496, 502 (Fed. Cir. 2018) ("[T]he Claims Court 'has no power to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" (quoting *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998))); *IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 64–65 (2022) ("Outside of 28 U.S.C. § 1491(b) actions and Contract Disputes Act (CDA) cases, *see* 41 U.S.C. §§ 7101–7109, '[t]he Tucker Act does not generally confer jurisdiction for actions seeking declaratory or injunctive relief.'" (alteration in original) (footnote omitted) (quoting *Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 999 (Fed. Cir. 2017))).

## IV.  DISCUSSION

Petitioner challenges Special Master Moran's decision to (1) deny the motion for recusal, and (2) dismiss Petitioner's claims. This Court reviews each of these challenges in turn, as well as Petitioner's claims that do not fall within the Vaccine Act.

When denying Petitioner's recusal request, Special Master Moran concluded that he would fairly adjudicate Petitioner's case based upon the evidence and that he held no bias or prejudice towards Petitioner. Special Master Decision at 3–4. Additionally, Special Master Moran cited binding and persuasive authority for denying Petitioner's request for his recusal. *Id.* (citing *Allphin v. United States*, 758 F.3d 1336, 1343–44 (Fed. Cir. 2014), *In re Hawsawi*, 955 F.3d 152, 160 (D.C. Cir. 2020), and *McKee v. U.S. Dep't of Just.*, 253 F. Supp. 3d 78, 81–82 (D.D.C. 2017)); *see Allphin*, 758 F.3d at 1343–44 ("Appellants'

7

subjective beliefs about the judge's impartiality are irrelevant. The judge's prior work for the Department of Justice . . . over seventeen years ago does not raise a reasonable question as to her impartiality." (applying 28 U.S.C. § 455(a))). Petitioner's recusal motion does not satisfy the applicable standard. *See, e.g.*, *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860–61 (1988) ("Under [28 U.S.C. § 455(a)], therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case *if a reasonable person*, knowing all the circumstances, would *expect that the judge would have actual knowledge*." (emphasis added) (quoting *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 802 (5th Cir. 1986), *aff'd sub. nom. Liljeberg*, 486 U.S. 847)).[5] Accordingly, Special Master Moran did not err in denying Petitioner's request for recusal.

The special master similarly did not err in his determinations about both the pneumococcal vaccine claim and the flu vaccine claim. First, the claim based on the pneumococcal vaccine is not covered by the Vaccine Program. As Special Master Moran noted, only pneumococcal *conjugate* vaccines are covered by the VICP. *See* Special Master Decision at 4 (citing National Vaccine Injury Compensation Program, 66 Fed. Reg. at 28166); National Vaccine Injury Compensation Program, 66 Fed. Reg. at 28166 ("Because the CDC only recommended pneumococcal *conjugate* vaccines to the Secretary for routine administration to children, *polysaccharide-type pneumococcal vaccines are not covered* under the VICP or included on the [Vaccine Injury] Table." (emphasis added)).

The source Special Master Moran cited remains in effect. *See* National Vaccine Injury Compensation Program: Revisions and Additions to the Vaccine Injury Table, 67 Fed. Reg. 48558, 48559–60 (July 25, 2002) (codified at 42 C.F.R. § 100.3) (amending the Table to include pneumococcal conjugate vaccines); 42 C.F.R. § 100.3 (the Vaccine Injury Table, which shows only pneumococcal conjugate vaccines and only associates such vaccines with two non-fatal injuries). As a result, Special Master Moran's decision to deny Petitioner's entitlement to relief was not arbitrary or capricious, an abuse of discretion, or contrary to law.

Second, the record before the special master supports his conclusion that Petitioner failed to show Ms. Williams had received the flu vaccine. Special Master Moran

---

[5] If Petitioner were correct that Department of Justice experience required Special Master Moran's recusal, he would be unable to perform the duties of his office because he would have to recuse himself from every petition before him. In addition, five of this Court's active, Senate-confirmed judges would be unable to hear cases squarely within this Court's jurisdiction. *See Armando O. Bonilla*, U.S. Ct. of Fed. Claims, http://www.uscfc.uscourts.gov/armando-o-bonilla (last visited July 3, 2023); *Kathryn C. Davis*, U.S. Ct. of Fed. Claims, http://www.uscfc.uscourts.gov/kathryn-c-davis (last visited July 3, 2023); *Richard A. Hertling*, U.S. Ct. of Fed. Claims, http://www.uscfc.uscourts.gov/richard-hertling (last visited July 3, 2023); *Molly R. Silfen*, U.S. Ct. of Fed. Claims, http://www.uscfc.uscourts.gov/molly-r-silfen (last visited July 3, 2023); *Matthew H. Solomson*, U.S. Ct. of Fed. Claims, http://www.uscfc.uscourts.gov/matthew-h-solomson (last visited July 3, 2023). Justice Department experience is manifestly not disqualifying.

reasonably concluded that "the evidence shows that Ms. Williams did not receive the alleged flu vaccine." Special Master Decision at 5. While consultation notes on February 4 and 5, 2022, listed a flu vaccine amongst Ms. Williams's medications, *see* ECF No. 14-2 at 97–103, the February 14, 2022, hospital discharge summary indicates that Ms. Williams did not receive the flu vaccine, *see id.* at 82 (showing a flu vaccine with a date crossed out and replaced with "Deferred"); *see also* ECF No. 25-1 at 3–4 (hospital records indicating that the flu vaccine had a status of "Deferred" and that the hospital "Discontinued" administering the vaccine because of Ms. Williams's discharge). Special Master Moran reached a conclusion supported by record evidence. Special Master Decision at 4–5. The special master's decision regarding Petitioner's flu vaccine claim is therefore not arbitrary or capricious.

In addition to her petition's vaccine claims, Petitioner raised a claim about annual employment-required vaccines for the first time in a motion following her petition for review. Conscious Motion at 3. However, this Court is unable to consider evidence that was not reviewed as part of the special master's decision. RCFC app. B, Vaccine R. 8(f) ("Any fact or argument not raised specifically in the record before the special master will be considered waived and cannot be raised by either party in proceedings on review of a special master's decision."); *see also O'Connell v. Sec'y of Health & Hum. Servs.*, 63 Fed. Cl. 49, 56 (2004) ("[The Court of Federal Claims'] review is strictly limited to the record that was considered by the special master.").[6] As a result of Vaccine Rule 8(f)(1), we cannot review Petitioner's claim about the cumulative effect employment-required vaccines had on Ms. Williams.[7]

---

[6] *See also Doe v. Sec'y of Dep't of Health & Hum. Servs.*, 94 Fed. Cl. 597, 621 (2010), *aff'd sub nom. Lombardi v. Sec'y of Health & Hum. Servs.*, 656 F.3d 1343 (Fed. Cir. 2011) ("The Rules of the United States Court of Federal Claims (RCFC), Appendix B, Vaccine Rules, Rule 8(f)(1) provide that '[a]ny fact or argument not raised specifically in the record before the special master will be considered waived and cannot be raised by either party in proceedings on review of a special master's decision.'" (alteration in original) (quoting RCFC app. B, Vaccine R. 8(f)(1))).

[7] Even if this Court could consider vaccine-related claims raised long after the petition and after a special master's decision, Petitioner provided no evidence that supports her claim. There is no documentation of Ms. Williams receiving these past vaccines. The lymph edema, "hypertension liver," and kidney failure Petitioner mentions in the context of these annual vaccines are not themselves Vaccine Injury Table injuries for MMR-like vaccines or seasonal flu vaccines (the types of vaccines Ms. Williams allegedly received annually). *See* 42 C.F.R. § 100.3; Conscious Motion at 3. Where petitioners seek redress for Non-Table injuries, a petitioner bears the burden to prove that a vaccine on the Table caused the alleged injuries by a preponderance of evidence. *Grant v. Sec'y of Health & Hum. Servs.*, 956 F.2d 1144, 1147–48 (Fed. Cir. 1992) (stating that claims beyond those listed in the Table must "affirmatively demonstrate that the injury or aggravation was caused by the vaccine" (emphasis omitted)); *see also Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005) (describing the burden a petitioner bears when claiming a Non-Table injury). Petitioner's claims are just that: claims — but there is no evidence supporting a

9

Petitioner also makes claims that are not related to the Vaccine Program. These include claims of negligent care, criminal wrongdoing, and unpermitted medication. Pet. at 1; Show Cause Resp. at 5–6. Even if these claims had been included in a separate complaint filed with this Court — as opposed to being part of a petition for review of a vaccine claim decision — this Court still would be unable to grant any relief. *See* 28 U.S.C. § 1491(a). For starters, Petitioner's various non-vaccine allegations do not involve the federal government, and this alone bars this Court from granting Petitioner relief for any of these allegations. *See, e.g.*, *Moore v. Pub. Defs. Off.*, 76 Fed. Cl. 617, 620 (2007) ("When a plaintiff's complaint names private parties, or local, county, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations." (citing *Stephenson v. United States*, 58 Fed. Cl. 186, 190 (2003))).

Putting aside the lack of an identified federal actor, some of Petitioner's claims are tort claims. Pet. at 1 (referring to the breach of a duty of care, medical negligence, and unpermitted medication). This Court plainly lacks jurisdiction over claims "sounding in tort." 28 U.S.C. § 1491(a); *see also Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) (citing 28 U.S.C. § 149l(a)(l)); *see also LeBlanc v. United States*, 50 F.3d 1025, 1030 (Fed. Cir. 1995) ("The short answer is that these are tort claims, over which the Court of Federal Claims has no jurisdiction."). Thus, even if those claims had been properly filed with this Court, we would dismiss them for lack of jurisdiction.

Nor does this Court have jurisdiction to grant Petitioner any relief related to her allegations of criminal wrongdoing. Petitioner's filings accuse Tampa General medical professionals of harvesting and trafficking Ms. Williams's organs. Show Cause Resp. at 5–6; *see also* Conscious Motion at 2. These claims are not only fantastical, but also they do not fall within the jurisdiction of the Court of Federal Claims; this Court has no jurisdiction over criminal claims. *See Jones*, 440 F. App'x at 918; *see also Joshua*, 17 F.3d at 379. Therefore, the Court would dismiss Petitioner's claims concerning alleged criminal acts if they were in a complaint.

Finally, whether in connection to the VICP or Petitioner's other allegations, the Court is unable to grant Petitioner the injunctive relief she seeks, even assuming the non-vaccine claims were properly filed and even if we had jurisdiction to consider them. Petitioner requests that she be granted "the transfer of clear adverse title to the home where Mrs. Williams resided and died." Pet. at 2. As explained above, this Court lacks the authority to grant such injunctive relief outside of narrow exceptions. *See, e.g.*, *IAP Worldwide Servs., Inc.*, 160 Fed. Cl. at 64–65.

---

connection between the vaccines Ms. Williams may have taken over years and the injuries she suffered.

## V.     CONCLUSION

For all of the above reasons, this Court finds that Special Master Moran's decision was not contrary to law, or otherwise arbitrary, capricious, or an abuse of his discretion. Thus, this Court **AFFIRMS** Special Master Moran's decision. The Court lacks jurisdiction over the non-vaccine claims even if they had been properly presented pursuant to this Court's rules. The Clerk shall enter **JUDGMENT** for the government, dismissing this case.[8]

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge

---

[8] Given that the Court found that the government is entitled to judgment and has addressed herein the contents of Petitioner's pending motion, the Court denies Petitioner's pending motion, ECF No. 35.